UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HSK, LLC d/b/a Zerorez MN, | Case No. 16-cv-2641 (WMW/KMM) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME** |
| United States Olympic Committee, The | |
| Defendant. | |

In this declaratory-judgment action against Defendant The United States Olympic Committee (USOC), Plaintiff HSK, LLC d/b/a Zerorez MN (Zerorez) seeks a declaration that it may use its corporate social media accounts to discuss the Olympic Games without violating USOC's trademark rights. USOC moves to dismiss for lack of subject-matter jurisdiction, asserting that a concrete dispute does not exist between the parties. (Dkt. 18.) Also before the Court are USOC's motion to strike Zerorez's untimely responsive brief, (Dkt. 26), and Zerorez's motion for an extension of time to file its responsive brief, (Dkt. 34), both of which are related to Zerorez's untimely filing of its response to USOC's motion to dismiss. Because Zerorez's late filing was the result of excusable neglect, Zerorez's motion for an extension of time is granted and USOC's motion to strike Zerorez's responsive brief is denied as moot. And because there is no concrete dispute between Zerorez and USOC over the use of Olympics-related trademarks, USOC's motion to dismiss for lack of subject-matter jurisdiction is granted.

## BACKGROUND

Zerorez initiated this lawsuit the day before the 2016 Olympic Games commenced in Rio de Janeiro, Brazil. Zerorez alleges that it had planned to discuss the 2016 Olympic Games through Zerorez's corporate social media accounts. But USOC's U.S. Olympic and Paralympic Brand Usage Guidelines provide that "commercial entities [other than official Team USA sponsors] may not post about the Games on their corporate social media accounts. This includes the use of USOC trademarks in hashtags such as #RIO2016 or #TeamUSA." The Brand Usage Guidelines also state that "[f]ederal law . . . allows the USOC to file a lawsuit against any entity using USOC trademarks, imagery or terminology for commercial purposes without express written consent." Zerorez alleges that USOC warned other commercial entities against posting comments about the Olympics through their social media accounts in advance of the 2016 Olympic Games. And certain media outlets, including The Guardian and ESPN, reported in July 2016 that USOC was threatening to enforce its trademark rights against businesses that are not official Team USA sponsors. Rather than risking legal action from USOC, Zerorez, which is not an official sponsor of Team USA, refrained from discussing the Olympics through its corporate social media accounts and filed this declaratory-judgment action. Zerorez seeks a determination of its rights to discuss on social media the 2016 Olympic Games and future Olympic events.

Specifically, Zerorez seeks a ruling that its proposed social media posts about the Olympics would not violate USOC's trademark rights or USOC's rights under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220506. Zerorez also seeks

declarations that USOC cannot preclude businesses that are not official Team USA sponsors from discussing the Olympics on social media and that, among other actions, USOC has "exaggerated the strength of its legal rights."

In support of its motion to dismiss Zerorez's claims for lack of subject-matter jurisdiction, USOC argues that there is no concrete dispute between the parties because Zerorez has not alleged that USOC threatened to enforce its trademark rights against Zerorez.  USOC also contends that the declaratory relief Zerorez seeks is not sufficiently specific to support the Court's exercise of declaratory-judgment jurisdiction.

Because Zerorez filed its opposition to USOC's motion one month late, USOC moved to strike Zerorez's untimely responsive brief.  Zerorez responded with a motion to extend the time to file its responsive brief under Federal Rule of Civil Procedure 6(b)(1).

## ANALYSIS

### I.   USOC's Motion to Strike and Zerorez's Motion for an Extension of Time

USOC moves to strike Zerorez's brief in response to USOC's motion to dismiss because the brief was filed approximately one month late.  After USOC moved to strike Zerorez's responsive brief, Zerorez moved for an extension of time to file its responsive brief.  Counsel for Zerorez attests that he miscalculated the filing deadline and that he prepared and filed the brief as soon as he realized his error.

Federal Rule of Civil Procedure 6(b)(1) permits a district court to extend the time for a party to act "on a motion made after the time has expired if the party failed to act because of excusable neglect."  Four factors inform this decision: (1) the possibility of prejudice to the opposing party; (2) the length of delay and the possible impact of the

delay on judicial proceedings; (3) the party's reasons for delay, including whether the delay was within the party's "reasonable control"; and (4) whether the party acted in good faith. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (internal quotation marks omitted). Miscalculation of a filing deadline can constitute excusable neglect, even though failure to comply with a deadline is within the party's own control. *See Sugarbaker v. SSM Health Care*, 187 F.3d 853, 856 (8th Cir. 1999).

Here, each factor weighs in favor of granting Zerorez's motion. USOC experienced no prejudice, and these proceedings were not delayed as USOC had ample time to file its reply brief in advance of the hearing. Although the miscalculation clearly was within Zerorez's control and Zerorez's counsel should have exercised greater care in calculating the filing deadline, the late filing is excusable. Nothing in the record indicates that the late filing was made in bad faith. Consequently, Zerorez's motion for an extension of time to file its responsive brief is granted. USOC's motion to strike therefore is denied as moot, and the Court considers the arguments raised in Zerorez's opposition brief in deciding USOC's motion to dismiss.

## II.   USOC's Motion to Dismiss for Lack of Subject-Matter Jurisdiction

USOC seeks dismissal of Zerorez's claims for lack of subject-matter jurisdiction on the ground that there is no case or controversy between the parties. Under Article III of the United States Constitution, the jurisdiction of federal courts extends only to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). When deciding a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a

district court "must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a facial attack is asserted, the court looks only at the pleadings to determine whether the plaintiff's allegations provide a sufficient basis for subject-matter jurisdiction; the non-moving party receives the same protections as if the court were deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *Id.*; *accord Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). But when a factual attack is asserted, the court considers matters outside the pleadings, and the non-moving party does not benefit from Rule 12(b)(6) safeguards. *Osborn*, 918 F.2d at 729 n.6; *accord Branson Label*, 793 F.3d at 914-15. Here, USOC asserts a facial challenge to the Court's subject-matter jurisdiction. Even if Zerorez's allegations are true, USOC argues, no controversy exists between the parties to satisfy the requirements of Article III or the Declaratory Judgment Act. Accordingly, when deciding this motion, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of Zerorez.[1]

The Declaratory Judgment Act limits the issuance of declaratory judgments to cases involving an "actual controversy." 28 U.S.C. § 2201(a). This requirement "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). In this context, an actual controversy requires a concrete dispute between parties with adverse legal interests, and the plaintiff must seek "specific relief through a decree of a conclusive character, as

---

[1] Contrary to Zerorez's assertion, jurisdictional discovery and an evidentiary hearing are not necessary before the Court decides this facial challenge to subject-matter jurisdiction because materials outside the pleadings are not considered.

distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937); *accord Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012). The burden of establishing the existence of an actual controversy rests with the party seeking a declaratory judgment. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

To determine whether an "actual controversy" exists in the declaratory-judgment context, district courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Prior to *MedImmune*, the United States Court of Appeals for the Federal Circuit required a declaratory-judgment plaintiff seeking to establish jurisdiction in a patent case to demonstrate that it had a "reasonable apprehension" of an infringement lawsuit and that it was taking concrete steps to conduct activity that could constitute infringement.[2] *See Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340,

---

[2]   Although many of the cases addressing subject-matter jurisdiction to issue a declaratory judgment in the intellectual-property context involve allegations of patent infringement, other courts have applied those precedents in trademark-infringement cases. *See, e.g.*, *Aegis Food Testing Labs., Inc. v. Aegis Scis. Corp.*, 913 F. Supp. 2d 742, 744-76 (D.S.D. 2012) (applying *MedImmune*); *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1010 (N.D. Ill. 2007) (stating that, "in declaratory judgment actions relating to trademarks, the Seventh Circuit has looked to patent infringement cases for the requirements for establishing an actual controversy"). Because the United States Court of Appeals for the Eighth Circuit relies on Federal Circuit precedent for persuasive guidance on patent issues, *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 970

1343 (Fed. Cir. 2007). Although *MedImmune* now requires courts to examine all the circumstances when analyzing whether an actual controversy exists between the parties, a reasonable apprehension of suit remains one way for a declaratory-judgment plaintiff to demonstrate that a justiciable controversy exists. *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 973 (8th Cir. 2015); *accord Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). Whether the declaratory-judgment plaintiff has engaged in potentially infringing activity or meaningful preparation for potentially infringing activity also is "an important element in the totality of the circumstances [that] must be considered in determining whether a declaratory judgment is appropriate." *Prasco*, 537 F.3d at 1336 n.4 (internal quotation marks omitted). When analyzing whether an actual controversy exists between the parties, other relevant circumstances include prior litigious conduct and the defendant's refusal to give assurances that it will not enforce its intellectual property rights. *Id.* at 1341.

To assess whether a declaratory-judgment plaintiff had a reasonable apprehension of a patent- or trademark-infringement lawsuit, courts often consider the extent and nature of communications between the parties, including whether the patent or trademark holder indicated that it might resort to litigation. Typically, a patent or trademark holder's direct statement of intent to enforce its intellectual property rights is indicative of an actual controversy. *See, e.g.*, *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345,

---

(8th Cir. 2015), and because other courts have relied heavily on patent cases in the context of declaratory-judgment actions related to trademark rights, the Court considers Federal Circuit authority persuasive as to the standard for establishing jurisdiction in a declaratory-judgment lawsuit over trademark rights.

1348-49 (Fed. Cir. 2011) (finding patent holder's statement that it would "act vigorously to protect its rights" against the letter's recipient indicative of an actual controversy); *Green Edge Ents., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1301 (Fed. Cir. 2010) (stating that "a threat of suit in the form of a cease and desist letter, in addition to other litigious conduct, is sufficient to confer declaratory judgment jurisdiction"). But when the tenor of the direct communications is not threatening, such communications between the parties do not necessarily establish an "actual controversy." *See, e.g.*, *Purely Driven Prods., LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1019 (C.D. Cal. 2016) (concluding that no controversy existed when defendants opposed plaintiffs' application to register their trademark but had not threatened an infringement action against the declaratory-judgment plaintiffs); *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716-17 (E.D. Mich. 2008) (concluding that no controversy existed when declaratory-judgment plaintiff "became unnecessarily defensive" and misinterpreted trademark holder's non-threatening statements in an attempt to create jurisdiction).

The mutuality of the perceived controversy also is relevant when analyzing whether an "actual controversy" exists. For example, in *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606 (D. Del. 2009), the district court concluded that an actual controversy did not exist between the parties despite the declaratory-judgment defendant's history of bringing patent-infringement claims against other infringers and the defendant's general expression of its intent to enforce its patent rights. In reaching this conclusion, the *Edmunds* court primarily relied on the absence of any allegation that the defendant believed the plaintiff to be infringing the defendant's patent. *Id.* at 610.

8

Without an allegation of infringement, "the controversy exists in the mind of only one side, which makes it speculative (as opposed to real) and one-sided (as opposed to *between* the parties)." *Id.*; *see also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (stating that "apprehension [of suit] alone, if not inspired by defendant's actions, does not give rise to an actual controversy") (internal quotation marks omitted).

Relying on *Dr. Reddy's Laboratories, Ltd. v. aaiPharma Inc.*, No. 01 Civ. 10102, 2002 WL 31059289 (S.D.N.Y. Sept. 13, 2002), Zerorez contends that USOC's broad warnings against infringement, which were publicized by certain media outlets, made it reasonable for Zerorez to believe that it could become the target of an infringement lawsuit. In *Dr. Reddy's Laboratories*, the district court concluded that a drug patent holder's nationally published statements that it might commence legal action against generic drug makers supported the existence of an actual controversy between the patent holder and the manufacturers of generic versions of the patented drug. *Id.* at *7. In reaching that conclusion, the district court determined that "threats of infringement suits against an entire product industry can create reasonable apprehension among all individual members of that industry." *Id.* Zerorez urges this Court to accept the reasoning of *Dr. Reddy's Laboratories* and apply it to the circumstances here. The Court declines to do so. If news reports of USOC's letters to other companies warning that only official sponsors of Team USA are permitted to use USOC's trademarks on their corporate social media channels create an actual controversy between USOC and Zerorez, a company with which USOC *never* communicated before this lawsuit, then any

9

company that is not an official sponsor of Team USA could bring a declaratory-judgment action against USOC by asserting the same facts. Such a conclusion would eviscerate the actual-controversy requirement.

No actual controversy between Zerorez and USOC is established from the totality of circumstances presented here. Zerorez does not allege that USOC ever communicated directly with Zerorez regarding USOC's trademark rights; nor does Zerorez allege that there is a history of trademark litigation (or any litigation) between the parties. Instead, Zerorez contends that the combination of three elements—USOC's Brand Usage Guidelines, written communications notifying other businesses that their use of USOC's trademarks without permission is prohibited, and USOC's track record of commencing trademark litigation—creates an actual controversy between USOC and Zerorez. And Zerorez asserts that media reports published during the weeks prior to the Olympics demonstrate that USOC was threatening to take legal action against business owners that infringe its trademarks on social media. Those media reports do not create an actual controversy, even if they made Zerorez reluctant to post comments about the Olympics through its corporate social media accounts. Importantly, USOC never threatened litigation against Zerorez. As in *Edmunds*, Zerorez's concern that it might become the target of a trademark-infringement lawsuit is speculative and one-sided. It is not based on the existence of a concrete dispute between the parties.

Because the totality of the circumstances alleged does not establish that an actual controversy exists between Zerorez and USOC, the Court grants USOC's motion to dismiss for lack of subject-matter jurisdiction.[3]

---

[3] Zerorez also argues that the Court should exercise jurisdiction under the Minnesota Declaratory Judgment Act. But Zerorez cites no authority for its assertion that the Minnesota Declaratory Judgment Act broadens this Court's subject-matter jurisdiction. And other courts in this District have rejected the same argument advanced by Zerorez here. *E.g.*, *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1075 (D. Minn. 2001) ("Carlson, however, has not given the Court any authority for the proposition that the Minnesota Declaratory Judgment Act grants courts broader jurisdiction to hear cases than the Federal Declaratory Judgment Act. Nor has Carlson offered any authority for the proposition that the Minnesota act should be applied when a federal court does not have subject matter jurisdiction under the Federal act. The Court, therefore, will not evaluate its subject matter jurisdiction under the Minnesota Declaratory Judgment Act."). As the reasoning of *Carlson Holdings* is persuasive, the Court declines to consider its jurisdiction under the Minnesota Declaratory Judgment Act.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendant The United States Olympic Committee's motion to dismiss, (Dkt. 18), is **GRANTED**;

2. Plaintiff HSK, LLC d/b/a Zerorez MN's motion for an extension of time, (Dkt. 34), is **GRANTED**; and

3. Defendant The United States Olympic Committee's motion to strike, (Dkt. 26), is **DENIED AS MOOT**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 4, 2017                           s/Wilhelmina M. Wright
                                               Wilhelmina M. Wright
                                               United States District Judge